T. L. LUCY ET ALS. *vs.* GEORGIE ANNA ORAM ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued March 1st—decided April 12th, 1932.

*Arthur M. Brown* and *Arthur T. Keefe,* for the appellants (defendants).

*Thomas E. Troland,* for the appellees (plaintiffs).

AVERY, J. From the finding of the court, it appears: In September, 1922, Harry A. Titus and Louisa Bishop purchased a tract of unimproved land, nearly rec-

tangular in shape, in the town of Waterford on the east side of the Niantic River, and lying between the Niantic River Road and the river. On its westerly side, the upland terminated in a steep bank ten or twelve feet above the shore. From this side, there was a clear, unobstructed view to the south and southwest, across the waters of Niantic Bay and Long Island Sound. By reason of its location, the land was desirable for the purpose of a seashore and summer resort colony. In order to develop the property, Titus and Bishop caused a map to be made, on which it was divided into lots bounded upon streets laid out and named on the map, and before any lots shown on the plan were sold, they caused the streets shown thereon to be plowed and scraped throughout their length as shown on the plan, so that the streets were outlined on the ground and fit for ordinary travel. The map showed the property divided into one hundred and twelve lots, with two streets (Bishop and Wood Streets) running through in an easterly and westerly direction from the Niantic River Road to the bank of the river, and showed a third (Mago Boulevard) thirty feet in width, running along the bank of the river about twenty feet from the beach, but not actually touching it at any point, except that the map showed steps leading from Mago Boulevard opposite Bishop Street and Wood Street, respectively, connecting those streets and Mago Boulevard with the beach at those points. Bishop Street is south of Wood Street. Mago Boulevard is four hundred and eighty-four feet in length. The map was recorded in the land records of the town of Waterford by Titus and Bishop September 22d, 1922. The plaintiffs are now the owners and in possession of various building lots purchased from Titus and Bishop and from the company formed by them for the purpose of selling and developing the

property. The plaintiffs' lots were sold to them by deed containing a reference to the lots by number as shown on the surveyor's map on file. The deed to the plaintiff Barker, in addition to the designation of the lot by number as shown on the map, contained this language "together with a right of way over streets as laid out on the above described plan to the waters of the Niantic River." Copies of the map were used by Titus and Bishop and their successors in the sales of the lots and were shown to the purchasers in bringing about the sales, and the plaintiffs bought their properties in reliance upon the general plan of Titus and Bishop for the development of the tract.

When Mago Boulevard was laid out, Titus and Bishop caused a line of posts to be erected along the top of the bank on the westerly edge of the boulevard throughout its entire length for the purpose of protecting users of the highway.

At the time the lots were laid out, there was a ramp on the southwest edge of Mago Boulevard, which was used by the various lot owners for access to the beach, and near the ramp were stairs used for the same purpose. In 1926, these were removed and stairs leading to the beach were placed as shown upon the map at the extensions of Bishop Street and Wood Street, respectively.

On July 7th, 1924, Titus purchased from the company the lot on the southwestern corner of the development, known as "Lot No. 1," shown on the map as lying east of Mago Boulevard and south of Bishop Street, and also the land lying west of Lot No. 1, and between that lot and the Niantic River, including that part of Mago Boulevard south of Bishop Street. Thereafter, August 9th, 1926, Titus conveyed the land so purchased to Sarah J. Graham, who, on the same day, reconveyed it to Maude G. Titus, the former's

wife, and she, on December 12th, 1929, by warranty deed, conveyed to the defendant Georgia Anna Oram, the part of the property east of Mago Boulevard, namely, Lot No. 1; and on the same day conveyed to her by quitclaim deed the remainder of the property between that lot and the Niantic River. The defendants at this time were familiar with the plan and the streets shown thereon, having been previously owners of other lots on the development. Thereafter, these defendants removed the line of posts at the top of the bank on the west side of Mago Boulevard, as far north as Bishop Street, and drove a line of posts, connected with chains, across Mago Boulevard adjoining the southerly line of Bishop Street extended so as to exclude the plaintiffs and other lot owners from the use of that part of the boulevard south of Bishop Street. The defendants also deposited piles of dirt on the property cut off.

The course of the Niantic River in front of this development is not straight, but runs in a curve, and Mago Boulevard, following the general line of the shore, is also curved. The southerly end of the boulevard is at a point where the beach projects out into the river, and from 1922 until 1929, this boulevard, throughout its entire length, was used by the plaintiffs and other lot owners, and particularly the part south of Bishop Street, as a promenade along the shore, for themselves and their guests, and they were accustomed to drive their automobiles onto it and to park them there when making use of the beach for bathing and otherwise. The southerly end of Mago Boulevard, being on the extreme point of the beach, offers a beautiful view to the south and southwest across the waters of Niantic Bay and Long Island Sound, and the plaintiffs and their guests and friends have been accustomed to walk there for the purpose of enjoying

the view. The action of the defendants in obstructing Mago Boulevard for approximately one fifth of its length and at its most desirable part for the purposes of a promenade and water view, has materially affected the value of the plaintiffs' properties.

The defendants have asked for certain corrections in the finding and that various paragraphs of their draft-finding be added to the finding as made. Many of the paragraphs requested to be added in substance ask the court to find that it was the intent of the developers of the property to permit the use of the streets shown on the map only so far as it was necessary and convenient to reach the beach or other ways or streets shown on the map. The finding of such an intent, except so far as communicated to the plaintiffs, would not be of material consequence in this case. *Fox* v. *Hartford & West Hartford Horse R. Co.,* 70 Conn. 1, 8, 38 Atl. 871; *Easterbrook* v. *Hebrew Ladies Orphan Society,* 85 Conn. 289, 295, 82 Atl. 561. The other corrections of the finding requested by the defendant have either been made by the court or are not permissible in view of the evidence certified; and we find that no correction of the finding can be made whereby the defendants' position will be advantaged.

The fundamental claim of the defendants is really one of law. They maintain that where lots are sold in such a development pursuant to a plan which is on record and exhibited to the lot owners, the latter are not entitled to have the streets shown on the plan kept open unless necessary for reaching some highway or the beach. They claim that as the part of Mago Boulevard enclosed by them is a dead end and useful to the plaintiffs only for the purposes of view, no case is presented which would justify the intervention of the equitable powers of a court. In regard to this claim, it is to be observed that the part of

Mago Boulevard fenced in by the defendants was useful to the plaintiffs not only for purpose of view, but also to park their automobiles and for similar purposes. The plan as laid out provides for steps at the end of Bishop Street and Wood Street, leading to the beach and the Niantic River; and the use of Mago Boulevard in the vicinity of these steps is manifestly advantageous and convenient to the lot owners in making use of the beach. *Fisk* v. *Ley,* 76 Conn. 295, 300, 56 Atl. 559.

In *Whitton* v. *Clark,* 112 Conn. 28, 33, 151 Atl. 305, and *Merino* v. *Fish, Inc.,* 112 Conn. 557, 560, 153 Atl. 301, we have adopted the rule that the true test of when a lot owner, who purchases a lot in a development where streets are shown upon a plan, will be permitted to enforce a right to the use of such street, depends upon whether the street so shown is of benefit to him. On the finding of the court, it clearly appears that the part of Mago Boulevard obstructed was of benefit to the plaintiffs, and under such circumstances they were entitled to an injunction against the closing of the street complained of.

There is no error.

In this opinion the other judges concurred.